# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

MICHAEL A. NORMAN,

    Plaintiff,

v.                                                    Case No. 5:19-cv-4-TKW/MJF

JULIE L. JONES, et al.,

    Defendants.
_____/

## ORDER and
## REPORT AND RECOMMENDATION

Plaintiff Michael Norman, a prisoner proceeding *pro se*, has filed an amended civil rights complaint asserting violations of the Civil Rights Act as amended, 42 U.S.C. § 1983, and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12134. (Doc. 9). The undersigned recommends that this case be dismissed under 28 U.S.C. § 1915A(b)(1), because Norman's amended complaint fails to state a claim upon which relief may be granted.[1]

---

[1] The court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

I.      **Background and Procedural History**

Norman is an inmate of the Florida Department of Corrections ("FDC") currently confined at Century Correctional Institution. *See* Florida Department of Corrections, Corrections Offender Network, Inmate Population Information Detail, located at www.dc.state.fl.us.[2] Norman was confined at Holmes Correctional Institution at the time he filed his original and amended complaints. (Docs. 1, 9).

Norman is suing six FDC officials in their official capacities: former Secretary Jones and five officials at Holmes CI (Warden Sumner, Correctional Officer Reinhard Riemer, Classification Officer Marcus Sims, Lieutenant C. Peel, and Sergeant J. Walsingham). (Doc. 9 at 1-2). Norman claims that Defendants unlawfully convicted him of a disciplinary infraction on February 22, 2018, for disobeying a verbal order (Officer Riemer's order to prepare for inspection). Specifically, Norman claims that the conviction violates his constitutional rights to due process and "equal treatment," as well as his statutory rights under the ADA, because he is hearing impaired and the verbal order was shouted from the end of the hallway instead of at his cell door. (Doc. 9 at 6-12). As a result of the conviction, Norman spent seven days in disciplinary confinement and lost ten days of gain time.

---

[2]http://www.dc.state.fl.us/offenderSearch/detail.aspx?Page=Detail&DCNumber=Q26485&TypeSearch=AI.

(*Id*. at 7, 9). Norman seeks a declaration that his disciplinary conviction violates the Due Process Clause; an "injunction" ordering the FDC to expunge the disciplinary report; reimbursement of the filing fee;[3] and "any and all other relief that this Honorable Court deems proper in the interest of justice, including injunctive relief." (*Id*. at 14).

## II. Discussion

Because Norman is a prisoner, the court is required to review his amended complaint, identify cognizable claims and dismiss the complaint, or any portion thereof, if the complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)-(b). The Rule 12(b)(6) standard governs dismissals for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6); *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). The court accepts all well-pleaded factual allegations of the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). To survive dismissal, "a

---

[3] Norman characterizes reimbursement of the filing fee as "compensatory damages" (Doc. 9 at 14), but the filing fee is a cost of suit recoverable by the prevailing party as a taxed cost, not an award of compensatory damages. *See* Fed. R. Civ. P. 54(d)(1).

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The mere possibility that the defendant acted unlawfully is insufficient. *Id.*; *see also* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."). The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, that is, "across the line from conceivable to plausible." *Id.* at 570; *see also Iqbal*, 556 U.S. at 678 (reiterating that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). A complaint may also be dismissed for failure to state a claim "when its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003); *see*

*also Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001); *Jones v. Bock*, 549 U.S. 199, 215 (2007) (reiterating that principle).

A. **Norman Cannot Use this Civil Action to Challenge His Disciplinary Conviction, Because He Lost Gain Time**

All of Norman's claims implicate (and seek relief from) his disciplinary conviction. Norman alleges that the conviction "caus[ed] him to lose 10 days of gain time (liberty) that will effectively extend his sentence." (Doc. 9 at 9, ¶ 7; *see also id*. at 10 ("Petitioner has alleged that he lost 10 days' good time credit as a result of his disciplinary violation.")). Norman seeks expungement of the disciplinary report. (*Id*. at 14). Because Norman's disciplinary conviction resulted in the loss of gain time (which affects the duration of his incarceration), he cannot use this civil action to challenge the disciplinary conviction. *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) ("This Court has held that a prisoner in state custody cannot use a § 1983 action to challenge 'the fact or duration of his confinement.'") (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Heck v. Humphrey*, 512 U.S. 477, 481 (1994); *Wolff v. McDonnell*, 418 U.S. 539, 554 (1974). Norman instead must seek federal habeas corpus relief under 28 U.S.C. § 2254, or relief in Florida courts. *Preiser*, 411 U.S. at 489.

### B. Even if Norman Did Not Lose Gain Time, His Claims Still Are Due to Be Dismissed

The record of Norman's disciplinary conviction, which is attached to the amended complaint, does not indicate that Norman lost gain time as a result of the disciplinary conviction. (Doc. 9, Attach. 4). The decision, itself, indicates that the sole punishment Norman received was seven days in disciplinary confinement. (*Id.*). Assuming this was Norman's only sanction (and thus the bar to relief discussed in subsection A, above, does not apply), his challenge to the disciplinary report still would be subject to dismissal.

#### 1. *Norman's Amended Complaint Fails to State A Plausible Claim for Relief Under the Due Process Clause*

Norman claims that his disciplinary conviction violates his right to procedural due process. (Doc. 9 at 8-12). "[A] § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003) (citing *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)). In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that there are two instances in which a prisoner may claim that prison officials deprived him of a constitutionally-protected liberty interest: (1) when a prison restraint "imposes atypical and

significant hardship on the inmate in relation to the ordinary incidents of prison life;" and (2) when a prison restraint is so severe that it essentially exceeds the sentence imposed by the court. 515 U.S. at 478, 484.

A seven-day term of disciplinary confinement does not impose an "atypical and significant hardship on" Norman, nor does it affect the duration of his sentence. *See Sandin*, 515 U.S. at 486 (holding that when disciplinary segregation or solitary confinement basically mirrors the conditions imposed on inmates in administrative segregation and protective custody, it does not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest, and a prisoner's 30-day stint in disciplinary segregation did not implicate a due process liberty interest); *see Rodgers v. Singletary*, 142 F.3d 1252 (11th Cir. 1998) (holding that over two months in administrative confinement as a result of a disciplinary charge was not a sufficient deprivation of a constitutionally protected liberty interest as defined in *Sandin*); *see also, e.g., Hoever v. Belleis*, 703 F. App'x 908, 910 (11th Cir. 2017) (holding that the plaintiff-prisoner failed to state a plausible due process claim arising from his disciplinary conviction that resulted in twenty days of disciplinary confinement); *Smith v. Reg'l Dir. Fla. Dep't. of Corr.*, 368 F. App'x 9, 13 (11th Cir. 2010) (concluding that the inmate failed to state a plausible due process claim where he was subjected to between fifteen and thirty

days of disciplinary confinement). Accordingly, Norman's amended complaint fails to state a facially plausible due process claim.

### 2. *Norman's Amended Complaint Fails to State A Plausible Claim for Relief Under the Equal Protection Clause*

One paragraph of Norman's amended complaint makes reference to a constitutional right to "equal treatment." Specifically, in the claim against the FDC Secretary, Norman asserts:

> I/M Norman hereby contends that Julie L. Jones, Secretary, of FDOC, has failed to issue [sic] that all of FDOC employees are properly trained in handling of disability [sic] inmates, i.e., hearing impaired. Therefore, her failure to take preventative measures has deprived I/M Norman of his constitution[al] right to due process of law and equal treatment as govern[ed] by the Fifth and Fourteenth Amendment.

(Doc. 9 at 12, ¶ 11). Norman later asserts, in a section of his complaint titled "ADA Complaint," that Defendants "clearly violated I/M Norman's right to due process/equal treatment by not giving his verbal order in manner and location that would ensure I/M Norman heard the same information as all other similarly situated hearing inmates, thus depriving I/M Norman the opportunity to perform." (Doc. 9 at 12, ¶ 12).

Norman's use of the phrase "equal treatment," without reference to a constitutional equal protection standard, and without distinct argument based on the Equal Protection Clause, does not state a facially plausible § 1983 claim for violation

of the Equal Protection Clause. *See Iqbal*, 556 U.S. at 678. Additionally, Norman's allegations regarding the alleged "unequal treatment" do not satisfy the equal protection standard.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1313 (11th Cir. 2006). Generally, equal protection violations arise when the State classifies and treats "some discrete and identifiable group of citizens differently from other groups." *Corey Airport Serves., Inc. v. Clear Channel Outdoor, Inc.*, 682 F.3d 1293, 1296 (11th Cir. 2012). Likewise, a state violates the Equal Protection Clause when it intentionally treats a plaintiff differently from others similarly situated without a rational reason for doing so. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). A plaintiff, therefore, must at least demonstrate that the state treated him differently than another similarly-situated person, based on his membership in an identifiable group or class or without a rational reason for the disparate treatment. *Corey*, 682 F.3d at 1296; *Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009); *Griffin Indus., Inc. v. Irvin*, 496

F.3d 1189, 1200-02 (11th Cir. 2007). To be "similarly situated," "the comparators must be prima facie identical in all relevant respects." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1264 (11th Cir. 2010); *Paramount Media Grp. Inc. v. Vill. of Bellwood*, 929 F.3d 914, 920 (7th Cir. 2019).

Additionally, to state a claim for an equal protection violation, a plaintiff must allege facts indicating that the defendant acted intentionally. *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987) (stating that a party alleging an equal protection violation must prove "the existence of purposeful discrimination"). "Proof of discriminatory intent or purpose is a necessary prerequisite to any Equal Protection Clause claim . . . ." *Corey*, 682 F.3d at 1297. Acting with a "discriminatory purpose" "implies more than intent as volition or intent as awareness of consequences. . . . It implies that the decisionmaker . . . selected . . . a particular course of action at least in part 'because of' . . . its adverse effects upon an identifiable group." *Pers. Admin'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

Norman alleges that on February 14, 2018, at 5:25 a.m., Officer Riemer verbally ordered all inmates to prepare for cell inspection, and that Riemer repeated his order at 6:00 a.m. (Doc. 9 at 6). At 6:15 a.m., Riemer and Captain Jackson conducted the inspection. When they arrived at Norman's cell, he was sleeping and not ready for inspection. (*Id*.). After Riemer charged Norman with disobeying his

order to prepare for inspection, Norman explained to the disciplinary report hearing team that: (1) he is a person with a hearing impairment and did not hear Officer Riemer's orders to prepare for inspection, (2) the batteries for his hearing aid had died, and (3) when Riemer and Jackson came to his cell door, he was lying on his bed under a blanket, but his cell was clean, his bed made, and he was dressed in his uniform. (Doc. 9 at 7). On February 22, 2018, the disciplinary hearing team considered Norman's arguments and found him guilty of the infraction. (Doc. 9, Attach. 3, 4).

Norman's allegations do not show that Officer Riemer or the disciplinary hearing team treated him differently than similarly-situated inmates because of his hearing impairment. The crux of Norman's claim is that he should have received *preferential* treatment (an individual order at his cell door) that was not available to other inmates. But the Equal Protection Clause does not require the state to make special accommodations for persons with disabilities so long as the state's actions are rational. *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 366–68 (2001). Because Norman fails to allege sufficiently a disparity of treatment based on his hearing impairment, his attempted equal protection claim fails. *See, e.g., Rylee v. Chapman*, 316 F. App'x 901, 907 (11th Cir. 2009) (dismissing hearing-impaired arrestee's equal protection claim for failure to state a claim, where arrestee failed to

establish any differential treatment and instead proposed that he should have received preferential governmental treatment, *i.e.*, privileges that were not available to individuals without hearing impairments).

### 3. *Norman's Amended Complaint Fails to State A Plausible Claim for Relief Under the ADA*

Norman sues Defendants in their official capacities, claiming that his disciplinary conviction violates the ADA. (Doc. 9 at 12-13). "To state a claim under Title II of the ADA, a plaintiff must allege: (1) that he is a 'qualified individual with a disability;' (2) that he was 'excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity' or otherwise 'discriminated [against] by such entity;' (3) 'by reason of such disability.'" *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001) (quoting 42 U.S.C. § 12132). An ADA claimant may proceed on theories of intentional discrimination, disparate treatment, or failure to reasonably accommodate the plaintiff's disability. *See Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008). "In cases alleging a failure to make reasonable accommodations, the defendant's duty to provide a reasonable accommodation is not triggered until the plaintiff makes a 'specific demand' for an accommodation." *Rylee*, 316 F. App'x at 906 (quoting *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999)). The prohibitions of

the ADA apply to state prisons. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998).

Norman claims that his disciplinary conviction violates the ADA, because Riemer "[did not give] his verbal order in manner and location that would ensure I/M Norman heard the same information as all other similarly situated hearing inmates, thus depriving I/M Norman the opportunity to perform." (Doc. 9 at 12-14). Norman alleges that Riemer should have given the order at Norman's cell door (as other officers did in the past), and not from down the hallway. Norman states that after his conviction, he was moved to an ADA cell next to the gate/office area. (*Id.* at 9, 11, 13).

Regardless of whether a plausible ADA claim could be construed from Norman's allegations, he cannot obtain the relief he seeks. Norman seeks to remedy the alleged ADA violation through issuance of an injunction ordering Defendants to expunge his February 22, 2018, disciplinary conviction. (Doc. 9 at 14). "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges . . . a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001). "In ADA cases, courts have held that a plaintiff lacks standing to seek injunctive relief unless he alleges facts giving rise to

an inference that he will suffer future discrimination by the defendant." *Shotz*, 256 F.3d at 1081 (citing cases). "Although past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury, [p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Wooden*, 247 F.3d at 1284 (internal quotations omitted) (alterations in original).

Norman admits that the incident with Officer Reimer was an isolated one, and that officers at Holmes CI routinely give verbal orders at his cell door, or house him with a cellmate who can hear. (Doc. 9 at 9, ¶ 5 ("I/M Norman participated in many cell inspections during his incarceration as other Officers gave the verbal order at his cell door where he could hear or was assigned a roommate who could advise I/M Norman."); *id*. at 13, ¶ 18 (same)). Norman also admits that shortly after the disciplinary conviction, prison officials at Holmes CI moved him to an ADA cell next to the gate/office area, where he could hear verbal orders. Norman explains:

> I/M Norman further states that Ofc. Riemer gave his verbal order at the end of the hall some 75-100 ft away from I/M Norman's cell. However, after I/M Norman was served the disciplinary report and found guilty of said infraction, he was moved from cell 15 to cell 1 (ADA cell).

(Doc. 9 at 13, ¶ 15; *see also id*. at 11 ¶ 9 and n.1 (identifying the appropriate "preventative measure" as housing him in the ADA cell next to the gate/office area,

which is where Norman concedes he was moved)). In addition, as noted above, the FDC's Corrections Offender Network indicates that Norman is no longer incarcerated at Holmes CI.

In light of the foregoing, Norman's amended complaint fails to state a plausible claim for injunctive relief under the ADA. *See, e.g., Shotz*, 256 F.3d at 1081–82 (holding that disabled persons who alleged that architectural barriers had impeded their ability to attend a public trial at a county courthouse in the past, in violation of the ADA, did not have standing to seek injunctive relief where they alleged no real and immediate threat of future discrimination); *Badillo v. Thorpe*, 158 F. App'x 208 (11th Cir. 2005) (holding that hearing-impaired litigant who alleged an ADA violation was not entitled to injunctive relief because he did not suggest that any failure to accommodate his disability was anything more than an isolated occurrence, and did not allege an immediate threat that his rights would be violated). Neither expungement of Norman's disciplinary conviction, nor prospective injunctive relief, is appropriate.

Norman also is precluded from recovering damages under the ADA. "The Supreme Court has held that because the Fourteenth Amendment grants Congress the power to enforce its provisions, Title II of the ADA validly abrogates state sovereign immunity to the extent that it creates a cause of action for damages against

states for conduct that violates the Fourteenth Amendment." *Redding v. Georgia*, 557 F. App'x 840, 844 (11th Cir. 2014) (emphasis added) (citing *United States v. Georgia*, 546 U.S. 151, 158–59 (2006)); *Black v. Wigington*, 811 F.3d 1259, 1269 (11th Cir. 2016) (reiterating that Congress validly abrogated sovereign immunity for conduct that simultaneously violates Title II and the Fourteenth Amendment). In order for Norman to state a plausible statutory ADA claim against the FDC for monetary damages, he must successfully state a predicate constitutional claim against one of the Defendants, as an agent of the FDC, in his official or individual capacity. *Miller v. King*, 384 F.3d 1248, 1264 n.16 (11th Cir. 2004), *vacated and superseded on other grounds*, 449 F.3d 1149 (11th Cir. 2006).

As explained above, the conduct underlying Norman's ADA claim did not violate his constitutional rights. Accordingly, it is apparent from the face of Norman's complaint that the Defendants are immune from an ADA claim for damages. *See United States v Georgia*, 546 U.S. at 159; *see also, e.g., Redding*, 557 F. App'x at 845 (holding that state prison officials were entitled to Eleventh Amendment immunity for assigning prisoners with disabilities top bunks, because this practice did not violate the Constitution).

### C. Dismissal is Appropriate

Norman's amended complaint fails to state a facially plausible claim for relief under the Civil Rights Act as amended, 42 U.S.C. § 1983, or Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-12134. Accordingly, this case should be dismissed for failure to state a claim upon which relief may be granted.

### III. Conclusion

For the reasons set forth above, it is **ORDERED**:

The clerk of court shall change the docket to reflect Plaintiff's current address (Century Correctional Institution).

The undersigned respectfully **RECOMMENDS** that:

1. This case be **DISMISSED** under 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief may be granted.

2. The clerk of the court be directed to close this case file.

At Panama City, Florida, this <u>11th</u> day of October 2019.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**